# Exhibit B

Case 1:07-cv-09551-LTS-GWG    Document 10-3    Filed 02/01/2008    Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN BALDANZI & GERALD P. LONG,<br><br>On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WFC HOLDINGS CORPORATION d/b/a WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil Action No. 1:07 cv-9551 (LTS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION TO DISMISS**</u>

WFC HOLDINGS CORPORATION d/b/a
WELLS FARGO BANK, N.A.

Of Counsel:

Thomas M. Hefferon
Marva R. Deskins
GOODWIN PROCTER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000 (telephone)
(202) 344-4444 (facsimile)
thefferon@goodwinprocter.com

James W. McGarry
GOODWIN PROCTER, LLP
Exchange Place
Boston, MA 02109
(617) 570-1000 (telephone)
(617) 523-1231 (facsimile)
jmcgarry@goodwinprocter.com
Dated: February 1, 2008

Brian D. Hail (BH – 1857)
GOODWIN PROCTER, LLP
599 Lexington Avenue,
New York, NY 10022
(212) 813-8800 (telephone)
(212) 355-3333(facsimile)
bhail@goodwinprocter.com

## TABLE OF CONTENTS

MEMORANDUM OF LAW IN SUPPORT OF ............................................................... 1

ALLEGATIONS OF THE COMPLAINT ................................................................... 2

ARGUMENT ........................................................................................................ 3

   A.  PLAINTIFFS' CLAIMS ARE PREEMPTED BY OCC REGULATION. ........ 5
   B.  THE EXCEPTIONS TO THE OCC REGULATIONS DO NOT SAVE THIS
       LAWSUIT. ................................................................................................. 7

CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Barnett Bank of Marion County, N.A. v. Nelson,*
   517 U.S. 25 (1996)..................................................................................................8-9

*Binetti v. Washington Mutual Bank,*
   446 F.Supp.2d 217 (S.D.N.Y. 2006).....................................................................11, 13

*Cipolone v. Liggett Group, Inc.,*
   505 U.S. 504 (1992).......................................................................................................7

*Clearinghouse Ass'n, L.L.C. v. Cuomo,*
   Nos. 05-5996, 05-6001, slip op. (2d Cir. Dec. 4, 2007) ........................................8, 10

*Davis v. Elmira Sav. Bank,*
   161 U.S. 275 (1896).......................................................................................................9

*Nat'l Bank v. Dearing,*
   91 U.S. 29 (1875)...........................................................................................................8

*NationsBank of N.C. v. Variable Annuity Life Ins. Co.,*
   513 U.S. 251 (1995).......................................................................................................9

*Talbott v. Silver Bow County,*
   139 U.S. 438 (1891).......................................................................................................8

*Watters v. Wachovia Bank, N.A.,*
   --U.S.--, 127 S. Ct. 1559 (2007) ...................................................................................9

*Wells Fargo Bank N.A. v. Boutris,*
   419 F.3d 949 (9th Cir. 2005) ........................................................................................8

**STATUTES**

12 U.S.C. §1.........................................................................................................................9

12 U.S.C. § 24..........................................................................................................8, 10-11

12 U.S.C. § 371....................................................................................................................8

12 U.S.C. § 371(a) ..............................................................................................................9

Home Owners' Loan Act of 1933....................................................................................13

N.Y. Gen. Bus. Law § 349 ...................................................................................................... 12

N.Y. Gen Bus Law § 349(a)…by .............................................................................................. 7

National Bank Act of 1864, 12 U.S.C. §§ 21 *et seq.* ............................................................ 6, 9

**OTHER AUTHORITIES**

12 C.F.R. § 34.4 ................................................................................................................ Passim

12 C.F.R. § 34.4(a) ................................................................................................................... 12

12 C.F.R. § 34.4(b) ............................................................................................................ 11, 13

12 C.F.R. § 560.2(c)(1) ............................................................................................................ 13

68 Fed. Reg. 46,264, 46,274 (Aug. 5, 2003) ........................................................................... 10

69 Fed. Reg. 1904, 1908 (Jan. 13, 2004) ................................................................................. 10

"Applicability of State Law," Section 34.4 ............................................................................. 10

Clause of the U.S. Constitution ................................................................................................. 7

U.S. Const., art. VI, cl.2 ............................................................................................................ 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN BALDANZI & GERALD P. LONG,<br><br>On Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WFC HOLDINGS CORPORATION d/b/a WELLS FARGO BANK, N.A.,<br><br>　　　　　Defendant. | Civil Action No. 1:07 cv-9551 (LTS) |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

WFC Holdings Corporation d/b/a Wells Fargo Bank ("Wells Fargo")[1] is a national bank which operates the largest mortgage lending retail network in the country. In their class action complaint, Kathleen Baldanzi and Gerald P. Long ("Plaintiffs") invoke state law to challenge "extra interest" they contend Wells Fargo charged them on the loan made in connection with their co-op apartment. Class Action Complaint ("Compl.") ¶ 2. Specifically, Plaintiffs contend Wells Fargo "charg[ed] Plaintiffs interest for four extra days" and "failed to calculate correct interest" amounts when they attempted to pay off their loan, allegedly holding up the release of its security interest on

---

[1] The Complaint refers to WFC Holdings Corp., which is not the proper entity subject to suit. Instead, the lender was Wells Fargo Bank, N.A. We will refer to the Bank as the defendant in the case.

1

the stock and the proprietary lease until the alleged excess amounts were made. *Id.* ¶¶ 4, 28.

The suit should be dismissed because state law preempts the three claims for relief. Wells Fargo is a national bank subject to the National Bank Act of 1864, 12 U.S.C. §§ 21 *et seq*. As such, the lending activities and loan servicing activities of Wells Fargo are subject to the exclusive regulation of the federal office of Comptroller of the Currency ("OCC"). Plaintiffs may not invoke state law to attempt to regulate Wells Fargo's practices in charging and collecting interest. The same is true as to state laws attempting to restrict Wells Fargo's loan servicing activities. OCC regulations specifically reserve for OCC the sole task of supervising Wells Fargo as to these subjects. 12 C.F.R. § 34.4.

Since the state law claims are preempted, this Court should go no further and the claims dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

On November 28, 2005, Plaintiffs obtained a mortgage loan from Wells Fargo for the purchase of a cooperative apartment. Compl. ¶ 16. In connection with the loan, Plaintiffs executed an Adjustable Rate Note that provided for an initial adjustable interest rate of 6.375 percent. *Id.* ¶ 17. The loan was secured by a security interest in Plaintiffs' shares of capital stock in the co-op property and the proprietary lease. *Id.* ¶ 21.

Plaintiffs claim that in November, 2005 they proceeded to pay off the loan but Wells Fargo allegedly charged them excess interest" amounting to approximately $200. *Id.* at ¶ 28. This resulted, they allege, from the fact that Wells Fargo "failed to calculate correct interest" amounts when they attempted to payoff. *Id.* Plaintiffs further assert that

Wells Fargo allegedly held up the release of their security interest until the payments were made. *Id.* ¶ 29. Plaintiffs aver that this same alleged conduct affected others, and so they bring the case as a putative class action. *See generally* Compl.

Plaintiffs' three causes of action are each based on the assertion that Wells Fargo charged them "extra interest." In the first cause of action, founded on breach of contract, Plaintiffs allege that Wells Fargo "charged *interest* not permitted by its Loan Agreements...constitut[ing] a breach." *Id.* ¶¶ 44-45 (emphasis added). The second cause of action alleges that Wells Fargo "engaged in materially 'deceptive acts and practices' within the definition of N.Y. Gen Bus Law § 349(a)...by misrepresenting the amount of *interest* that New York State Borrowers would be charged, by failing to advise the Borrowers in advance that they would be forced to pay an extra *interest* charge, and by wrongfully extracting such excessive *interest* at closing." *Id.* ¶ 49 (emphasis added). Plaintiffs' third cause of action alleges that Wells Fargo unjustly enriched itself in "the collection and retention of extra-contractual *interest* rightfully belonging to Plaintiffs and the Class." *Id.* ¶ 55 (emphasis added).

## ARGUMENT

Under the Supremacy Clause of the U.S. Constitution, the "laws of the United States" are "the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const., art. VI, cl.2. Accordingly, any state law that conflicts with a federal law is "without effect." *Cipolone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *McCullough v. Maryland*, 17 U.S. 316, 347 (1819)).

While federal courts are sometimes reluctant to find state laws preempted, the ordinary "presumption against federal preemption of state law is inapplicable to federal banking regulation." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005). As the Second Circuit has observed, the presumption against preemption "disappears" in the context of national bank regulation. *Clearinghouse Ass'n, L.L.C. v. Cuomo*, Nos. 05-5996, 05-6001, slip op. at 11 (2d Cir. Dec. 4, 2007). Indeed, there is in fact a strong presumption *in favor of preemption* of state laws regulating the banking activities of national banks. That is because the National Bank Act was intended to establish a banking system of "national character" with "uniform and universal operation" (*Talbott v. Silver Bow County*, 139 U.S. 438, 443 (1891)), and courts therefore interpret any grant of power by that Act as "ordinarily pre-empting[] contrary state law." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32-33 (1996) (states may not "prevent or significantly interfere with the national bank's exercise of its powers").

The National Bank Act bestows on national banks the authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). Those incidental powers "include activities that are 'convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express power under the National Bank Act.'" *Bank of America*, 309 F.3d at 562 (citation omitted). The express power of the National Bank Act here is that of making real estate loans. 12 U.S.C. § 371. State laws that would "prevent or significantly interfere with [a] national bank's exercise of" its express and incidental powers are preempted. *Barnett Bank,* 517 U.S. at 33; *see also Farmers' & Mechs.' Nat'l Bank v. Dearing*, 91 U.S. 29, 34 (1875) ("the States can exercise no control over [national

4

banks], nor in any [way] affect their operation, except in so far as Congress may see proper to permit"); *Bank of America*, 309 F.3d at 561 (the National Bank Act "protect[s] national banks against intrusive regulation by the States" and a state law is preempted if it "conflict[s] with federal law, frustrate[s] the purposes of the National Bank Act, or impair[s] the efficiency of national banks to discharge their duties").

The National Bank Act of 1864, 12 U.S.C. §§ 21 *et seq.* ("NBA") provides that:

> Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate…and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

12 U.S.C. § 371(a). As noted, courts have interpreted any grant of power by the NBA as necessarily preempting any state law. *Barnett Bank*, 517 U.S. at 25; *Watters v. Wachovia Bank, N.A.*, --U.S.--, 127 S. Ct. 1559, 1567-68 (2007) ("state law may not…curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA"). If a state law interferes with the exercise of a national bank's powers, then that "attempt by a state to define [the bank's] duties or control the conduct of their affairs is absolutely void." *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896).

A.   **PLAINTIFFS' CLAIMS ARE PREEMPTED BY OCC REGULATION.**

The Office of the Comptroller of the Currency ("OCC") is charged with the enforcement of banking laws as they apply to national banks. *NationsBank of N.C. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995); 12 U.S.C. §1. As the Supreme Court stated just last term, the OCC "oversees the operations of national banks and their interactions with customers ... largely to the exclusion of other governmental entities, state or federal." *Watters*, 127 S.Ct. at 1564. As part of its powers, the OCC can

5

define the scope of its own authority and identify those aspects of a bank's incidental powers it, rather than a state, should regulate. *Clearinghouse,* slip op. at 6.

Under OCC regulations, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4 (hereinafter referred to as "Section 34.4"). *See also, e.g.,* OCC Preemption Determination and Order, 68 Fed. Reg. 46,264, 46,274 (Aug. 5, 2003) (preemption occurs whenever a state law "alter[s] or condition[s] a national bank's ability to exercise a power that Federal law grants to it"). The OCC has recognized that broad preemption of state regulation of national banks is critical to the National Bank Act's goals of permitting national banks to operate under a single, uniform set of rules:

> When national banks are unable to operate under uniform, consistent, and predictable standards, their business suffers, which negatively affects their safety and soundness. The application of multiple, often unpredictable, different state or local restrictions and requirements prevents them from operating in the manner authorized under Federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure.

OCC, Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1908 (Jan. 13, 2004).

As shown above, the National Bank Act authorizes national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). In its regulations of "Bank Activities and Operations," and under the heading "Applicability of State Law," Section 34.4 specifies certain areas identified by the OCC as strictly prohibited from state regulation. *See* 12 C.F.R. § 34.4. These

areas include: terms of credit, including schedule for repayment of principal and interest; and "servicing" of loans. *Id.* at § 34.4(a)(4), (10).

However one might characterize Plaintiffs' claims, they are preempted by these OCC regulations. In each Count, Plaintiff allege they were charged extra interest in connection with their real estate loan. *See* Compl. ¶¶ 44-45, 49, 55. As such, Plaintiffs' claims could be treated as a complaint about the amount of interest charged; this type of cause of action is preempted by both the general clause of Section 34.4 and by subsection (4) of Section 34.4. Alternatively, Plaintiffs could characterize their claims as ones that challenges how Wells Fargo quoted payoff amounts, handled payoff funds, and decided when and how it would release its liens; this would be preempted by both the general clause of Section 34.4 and by subsection (10) of Section 34.4.

In a broader sense, the challenge to Wells Fargo's alleged collection of "interest" from Plaintiffs is naturally the subject of federal preemption. The charging of interest in an inherent banking activity which is certainly a power "incidental" to the "business of banking." 12 U.S.C. § 24 (Seventh). The administration of a loan account is similarly at the heart of a national bank's banking activity. *Id.*

B.  **THE EXCEPTIONS TO THE OCC REGULATIONS DO NOT SAVE THIS LAWSUIT.**

We expect that Plaintiffs will contend that this suit falls within certain exceptions to the broad OCC regulations, but that argument, if and when advanced, should be rejected. This argument would rely on Section 34.4(b), which refers to circumstances where a state law is not preempted that "only incidentally affect[s]" lending operations. 12 C.F.R. § 34.4(b). Judge McMahon's decision in *Binetti v. Washington Mutual Bank*,

446 F.Supp.2d 217 (S.D.N.Y. 2006), found a claim like this not preempted, so we expect Plaintiffs will also rely on Binetti.

While Wells Fargo will reply in full to Plaintiffs' opposition in due course, it is perhaps helpful for the Court to understand at the outset the outline of why this anticipated argument is no impediment to a finding of preemption.

Section 34.4 contains two main provisions. The first, which is the operative rule here, prohibits state regulation in fourteen (14) specified areas and contains a catchall prohibition on state laws that "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers." 12 C.F.R. § 34.4(a). The second part of the section provides that state laws of certain listed types – there are only eight (8), and a catchall applying only if OCC has found no preemption – are not preempted "to the extent that they only incidentally affect the exercise of national banks' real estate lending powers." *Id.*, § 34.4(b). Among those state laws are laws on the subject of "contracts." *Id.*

Plaintiffs' expected assertion that the exception for laws on the subject of "contracts" should permit his suit is unavailing. As an initial matter, the argument plainly would not excuse preemption over their two (2) non-contract claims for relief, for unjust enrichment and for violation of N.Y. Gen. Bus. Law § 349. Plaintiffs may not maintain their suit for breach of contract either, because the first portion of Section 34.4 flatly prohibits *any* state regulation at all as to the subject of collection of "interest" as part of loan servicing. Nor does the contract cause of action only "incidentally affect" Wells Fargo's lending powers and operations.

8

*Binetti v. Washington Mutual Bank* does not provide an impediment to this motion either. *Binetti* concerns the preemptive effect of the Home Owners' Loan Act of 1933 ("HOLA"), which applies to federal savings associations and not national banks. Notably, the focus of *Binetti* is on an Office of Thrift Supervision ("OTS") regulation, and two OTS opinion letters, concerning an exception – for "commercial law" – that does not appear in the Section 34.4 of the OCC regulations. *Compare* 12 C.F.R. § 560.2(c)(1) with § 34.4(b). Moreover, the *Binetti* court's reasoning as to the preemptive effect of HOLA on the *Binetti* plaintiff's contract claim is not substantively explained. 446 F.Supp.2d at 218-19.

Wells Fargo will address these issues further, to the extent necessary, in reply.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Wells Fargo respectfully requests that this Court dismiss Plaintiffs' complaint in its entirety, with prejudice.

        Respectfully submitted,

        WFC HOLDINGS CORPORATION d/b/a
        WELLS FARGO BANK, N.A.

        By their attorneys,

        /s/ Brian D. Hail
        Brian D. Hail (BH – 1857)
        GOODWIN PROCTER, LLP
        599 Lexington Avenue,
        New York, NY 10022
        (212) 813-8800 (telephone)
        (212) 355-3333 (facsimile)
        bhail@goodwinprocter.com

Of Counsel:

Thomas M. Hefferon
Marva R. Deskins
GOODWIN PROCTER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000 (telephone)
(202) 344-4444 (facsimile)
thefferon@goodwinprocter.com

James W. McGarry
GOODWIN PROCTER, LLP
Exchange Place
Boston, MA 02109
(617) 570-1000 (telephone)
(617) 523-1231 (facsimile)
jmcgarry@goodwinprocter.com

Dated: February 1, 2008

LIBW/1665911.1