IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KATHLEEN BALDANZI and                    )
GERALD P. LONG, on behalf of             )
themselves and all others similarly      )
situated,                                )
                                         )
           Plaintiffs,                   )
                                         )   CIVIL ACTION NO. 07-CV-9551 (LTS)
     v.                                  )
                                         )
WFC HOLDINGS CORPORATION                 )
d/b/a WELLS FARGO BANK, N.A.,            )
                                         )
           Defendant.                    )
                                         )

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT WFC HOLDINGS CORPORATION d/b/a WELLS
FARGO BANK, N.A.'S MOTION TO DISMISS THE CLASS ACTION
COMPLAINT ON FEDERAL PREEMPTION GROUNDS UNDER
THE NATIONAL BANK ACT

SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, Tenth Floor
New York, New York 10022
Telephone: (646) 723-2947
Attorneys for Plaintiffs and the Class

Of Counsel:
     Jeremy Heisler
     Steven L. Wittels
     David W. Sanford
     William R. Weinstein
     Andrew Melzer

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL SYNOPSIS AND SUMMARY OF ARGUMENT AS TO WHY NBA
PREEMPTION DOES NOT APPLY ............................................................... 1

FACTUAL BACKGROUND.................................................................................... 5

I.     Allegations of the Complaint ............................................................... 5

II.    The Bank Forces Plaintiffs to Pay Extra-contractual Interest................................ 6

III.   Plaintiffs Sue for Themselves and the Class........................................................ 6

ARGUMENT

I.     THE NBA DOES NOT PREEMPT PLAINTIFFS' COMPLAINT. A
NATIONAL BANK IS GOVERNED BY STATE CONTRACT LAW,
COMMON LAW AND CONSUMER PROTECTION STATUTES
WHERE, AS HERE, SUCH LAWS DO NOT IMPAIR THE
OPERATION OF THE BANK. AT BAR, PLAINTIFFS' SUIT DOES
NOT IMPAIR WELLS FARGO'S OPERATIONS NOR DOES IT SEEK
TO REGULATE WELLS FARGO'S IMPOSITION OF INTEREST.
RATHER, PLAINTIFFS SUE TO ENFORCE WELLS FARGO'S
VOLUNTARILY ASSUMED OBGLIATION TO CHARGE INTEREST
ONLY ON "UNPAID PRINCIPAL." ................................................................. 7

    A.    A History of the National Bank Act ........................................................ 7

    B.    The Holding of National Bank v. Commonwealth- National Banks
are Governed Predominantly by State, Not Federal Law .......................... 8

    C.    Preemption Standards Under the NBA: Federal Chartered Banks
Are Subject to State Law......................................................................... 8

    D.    OCC Regulations Exempt This Case from NBA Preemption.................. 11

    E.    The OCC's Chief Counsel Testifies That State Contract Law and
Consumer Fraud Statutes Are Not Preempted......................................... 12

    F.    A Torrent of Precedent Has Held There Is No NBA Preemption in
Suits Like This One ............................................................................... 12

         (i)    Breach of Contract Claim Not Preempted by the NBA............... 13

(ii)  Consumer Fraud Act and Contract Claims Not Preempted
by the NBA ............................................................................... 14

(iii) Unjust Enrichment – Restitution Claims Not Preempted by
the NBA ................................................................................. 16

G.  Cases Under the More Preemption-Biased HOLA Have Ruled
Against Preemption in Similar Factual Situations.................................... 17

H.  Binetti v. Washington Mutual Dooms Wells Fargo's Preemption
Motion ...................................................................................... 18

I.  Application of the Above Authority to This Case ................................... 19

J.  The Cases Relied on by Defendant Are Easily Distinguishable .............. 20

K.  Public Policy Considerations Compel Denial of Wells Fargo's
Attempt to Immunize Its Wrongdoing on Preemption Grounds .............. 21

CONCLUSION............................................................................................. 22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson National Bank v. Luckett*
  321 U.S. 233, 248 (1944) ................................................................................................9

*Atherton v. Federal Deposit Insurance Corporation*
  519 U.S. 213, 222-223 (1997) ................................................................................*passim*

*Bank of America v. City and County of San Francisco*
  309 F.3d 551 (9th Cir.2002) ........................................................................................21

*Barnet Bank of Marion County, N.A. v. Nelson*
  517 U.S. 25 (1996) ......................................................................................................21

*Binetti v. Washington Mutual Bank*
  446 F. Supp. 2d 217 (S.D.N.Y. 2006) ............................................................... 4, 18, 19

*Bumpers v. Community Bank of Northern Virginia*
  2008 U.S. Dist. LEXIS 5107 (W.D. Pa. 2008) ...........................................................17

*Carson v. H&R Block, Inc.*
  250 F. Supp. 2d 669, 673 (S.D. Miss. 2003) .............................................................15

*Clearinghouse Ass'n, L.L.C. v. Cuomo*
  510 F.3d 105 (2d Cir. 2007) ........................................................................................21

*Cortazar v. Wells Fargo & Co.*
  2004 U.S. Dist LEXIS 30215 (N.D. Cal. August 9, 2004) .................................... 4, 14

*Cross-County Bank v. Klussman*
  2004 U.S. Dist. LEXIS 7835 (N.D. Cal. April 30, 2004) ...................................... 4, 16

*Davis v. Elmira Savings Bank*
  161 U.S. 275, 290 (1896) ..............................................................................................9

*First National Bank of St. Louis v. Missouri*
  263 U.S. 640, 656 (1924) ..............................................................................................9

*Flanagan v. Germania, F.A.*
  872 F.2d 231, 234 (8th Cir. 1989) ...............................................................................18

*Great Western Resources, LLC v. Bank of Arkansas, N.A.*
  2006 U.S. Dist. LEXIS 92237 (W.D. Ark. March 13, 2006) ............................... 4, 14

*Harrison v. H&R Block, Inc.*
250 F. Supp. 2d 669 (S.D. Miss. 2003)......................................................................................4

*Hunter v. Beneficial National Bank U.S.A.*
947 F. Supp. 446, 451-52 (M.D. La. 1996)..............................................................................16

*Jefferson v. Chase Home Finance*
2007 U.S. Dist. LEXIS 94652 (N.D. Cal. 2007) ...........................................................5, 16, 17

*Levitansky v. FIA Card Services, N.A.*
492 F. Supp. 2d 758 (N.D. Ohio 2007)..........................................................................4, 13, 14

*Mason v. Fidelity Federal Bank*
40 F. Supp. 2d 1340 (M.D. Ala. 1999) ...................................................................................15

*McClellan v. Chipman*
164 U.S. 347 (1896).................................................................................................................10

*McCulloch v. Maryland*
17 U.S. 316 (1819)..............................................................................................................8, 22

*Monday v. Coast to Coast Wireless Cable*
1997 U.S. Dist. LEXIS 2970 (M.D. Alabama 1997)...........................................................4, 13

*National Bank v. Commonwealth*
76 U.S. 353 (1869).............................................................................................................passim

*Patterson v. Regions Bank*
2006 U.S. Dist. LEXIS 86029 (S.D. Ill. 2006) .................................................................4, 14

*Smith v. Beneficial National Bank U.S.A.*
971 F. Supp. 513 (M.D. Ala. 1997) ........................................................................................13

*Tuxedo Beach Club Corp. v. City Federal Savings Bank*
749 F. Supp. 635, 658 (D.N.J. 1990) ......................................................................................18

*Wallace v. National Commerce Bancorporation*
193 Tenn. App. LEXIS 152 (Court of App. Tenn. 1993) ........................................................15

*Watters v. Wachovia Bank, N.A.*
127 S. Ct. 1559, 1574 (2007, Stevens, J., dissenting)..................................................2, 19, 21

*Wells Fargo Bank N.A. v. Boutris*
419 F.3d 949 (9th Cir. 2005)...................................................................................................20

*West Virginia v. Parrish Automobile Training Co.*
147 F. Supp. 2d 470, 471 (N.D. Va. 2001) ................................................................ 4, 13, 15

## STATE CASES

*Derenco, Inc. v. Benjamin Franklin Federal Savings & Loan Association*
577 P.2d 477 ....................................................................................................... 18

*In re Jack*
126 Misc. 2d 1060, 1062 ........................................................................................ 12

*Konynenbelt v. Flagstar Bank*
617 N.W.2d 706, 710-714 (Mich. App. 2000) ...................................................... 18

*Siegel v. American Savings & Loan Association*
210 Cal. App. 3d 953, 958-965 (1989) ................................................................. 18

*Smith v. Wells Fargo Bank, N.A.*
135 Cal. App. 1463 (2005) ............................................................................... 15, 17

## FEDERAL STATUTES

12 U.S.C. § 1462(a)(f) ...................................................................................... 11

12 U.S.C. § 1831(d) .......................................................................................... 16

12 U.S.C. 1821(k) .............................................................................................. 9

## STATE STATUTES

New York General Business Law § 349(a) ...................................................... *passim*

## FEDERAL REGULATIONS

12 C. F. R. §34.4 ............................................................................................... 11

12 C.F.R. § 34.4(b) ............................................................................................. 3

12 C.F.R. § 560.2(a) ................................................................................... 5, 6, 17

12 C.F.R. § 7.4008(c) ................................................................................... 11, 15

12 C.F.R. § 7.4008(d)(e) ............................................................................... 11, 12

12 C.F.R. § 7.4008(d)(e) ................................................................................................................ 11, 12

## Preliminary Statement

The Complaint's claims for breach of contract, unjust enrichment and violation of New York General Business Law § 349(a) ("GBL") are not preempted by the National Bank Act of 1864 ("NBA" or "The Act") or the regulations promulgated thereunder. Over a century of U.S. Supreme Court and Federal precedents, together with regulations promulgated by the Office of the Comptroller of the Currency ("OCC") and the congressional testimony of OCC's Chief Counsel, coalesce to confirm that the NBA does not preempt garden-variety state law breach of contract, unjust enrichment, and consumer fraud suits like the one here. Accordingly, Defendant WFC Holdings Corporation d/b/a Wells Fargo Bank, N.A.'s motion to dismiss this action on preemption grounds must be denied.

## Factual Synopsis and Summary of Argument As To Why NBA Preemption Does Not Apply

Defendant WFC Holdings Corporation d/b/a Wells Fargo Bank, N.A. ("The Bank" or "Wells Fargo") made co-op mortgage loans to Plaintiffs Kathleen Baldanzi and Gerald P. Long ("Plaintiffs") and a class of similarly situated borrowers. Unequivocally and unambiguously, the Bank's loan documents state that Wells Fargo will charge interest on **"unpaid principal."** Plaintiffs bring this action because Wells Fargo has breached its loan contract, unjustly enriched itself, and violated New York State's consumer fraud act (General Business Law § 349) and comparable out-of-state consumer protection statutes. (Complaint at ¶¶ 47-53, annexed as Exhibit A to Declaration of Jeremy Heisler, Esq., Plaintiffs' Co-Counsel [hereafter "Heisler Dec."]). How so? The defendant Bank imposes interest on **paid principal**. That is, even after Plaintiffs and the class fully pay off their co-op mortgage loans, the Bank still charges its co-op borrowers 1-4 days of extra-contractual post-pay-off interest.

Wells Fargo now moves to dismiss, arguing that it is a national bank, and therefore the

National Bank Act of 1864 completely preempts all of Plaintiffs' causes of action challenging the Bank's exaction of undisclosed, non-contractual interest.    Plaintiffs' suit—says Wells Fargo—attempts to regulate its practices in charging and collecting interest and thereby impinges on the banking activities of a national bank in violation of federal regulations and the supremacy clause of the United States Constitution (Wells Fargo Mem, p.2).

Wells Fargo is wrong. Its motion borders on the frivolous because Defendant scrupulously avoids citing dispositive United States Supreme Court precedent stretching back nearly 150 years—precedent directly contrary to the Bank's preemption position here.

In National Bank v. Commonwealth, 76 U.S. 353, 362 (1869), the Supreme Court laid down the foundational rule—"the lodestar of our jurisprudence"[1]— that a dual system of Federal **and State** laws govern national banks, and such banks are routinely subject to the same state laws on contracts applicable to all persons in the state. **For national banks, subjection to State law is the rule, and preemption the exception:**

> National banks are only exempted from state legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. **They are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws.** Their acquisition and transfer of property, their right to collect their debts, and the liability to be sued for debts are all based on state law. **It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.** (Emphasis Supplied).

Accord Atherton v. Federal Deposit Insurance Corporation, 519 U.S. 213, 222-223 (1997) (quoting with approval National Bank v. Commonwealth, supra).

The OCC, the regulatory body charged with administering the National Bank Act, has promulgated regulations declaring that state laws on "(1) contracts; (2) torts; … and (8) any other laws, the effect of which the OCC determines to be incidental to the non-real estate lending

---

[1] Watters v. Wachovia Bank, N.A., 127 S. Ct. 1559, 1574 (2007, Stevens, J.)

operations of national banks… [are not preempted] to the extent they only incidentally affect the exercise of national banks' lending powers." 12 C.F.R. § 34.4(b).

In sworn testimony before the House of Representatives in 2004, the OCC's Chief Counsel, Julie L. Williams, made clear that the National Bank Act "does not immunize national banks from complying with a host of State laws that form the infrastructure of doing the business of banking; contract law, tort law, public safety laws, generally applicable criminal law." (See Congressional Review of OCC Preemption, Hearing Before the Subcommittee on Oversight and Investigations of the Committee on Financial Services U.S. House of Representatives, 184th Congress, First Session, Jan. 28, 2004 (Serial No. 108-65), p. 14 (Selected pages annexed as Exhibit B to Heisler Dec.), (hereafter, "Cong. Review of OCC Preemption").

And, responding to a Congressman who implied that OCC regulations do, in fact, preempt state consumer protection and deceptive practices statutes, the same OCC Chief Counsel swore that exactly the opposite is true:

> **If you have a State law that says do not engage in unfair and deceptive practices; … of course, we do not argue that it would interfere with a national bank's Federal powers that it has to be allowed to engage in unfair or deceptive practices…. That type of law protects against practices that are fundamentally inconsistent, abhorrent, to national banks and the way we want to see the national banking system operate.** (Cong. Review on OCC Preemption. p. 33)

Building on these precedential and regulatory building blocks, the cases have overwhelmingly ruled **that there is no preemption under the National Bank Act** when, as here, a national bank breaches its contract with customers or borrowers and (a) charges interest or fees greater than the amount agreed upon or (b) imposes fees or interest never disclosed in the applicable contracts. The decisions also concur that the rule of nonpreemption applies to causes of action for breach of contract, violation of state consumer fraud statutes, and claims for unjust

enrichment or restitutionary recovery[2]. **"Overwhelmingly, [Federal] District Courts have found that claims for failure to disclose interest charges are not within the scope of ... the NBA."** Monday v. Coast to Coast Wireless Cable, 1997 U.S. Dist. LEXIS 2970, at p.*29 (M.D. Ala. 1997).

If any single case supplies the *coup de grace* to Wells Fargo's preemption motion, it is Judge Colleen McMahon's recent decision in Binetti v. Washington Mutual Bank, 446 F. Supp. 2d 217 (S.D.N.Y. 2006). Binetti's facts are a virtual clone of this case. There, as here, the mortgage lending bank (Washington Mutual) imposed 1-4 days of interest on co-op borrowers who had fully paid off their loans, notwithstanding the loan contract's specific undertaking that Washington Mutual would apply interest to "unpaid principal" only. Like Wells Fargo at bar, Washington Mutual argued that Federal banking laws and regulations, specifically, the Home Owner's Loan Act ("HOLA") and regulations issued by the Office of Thrift Supervision ("OTS")[3] preempted Plaintiff-Binetti's counts for breach of contract, unjust enrichment, and violations of New York GBL §349.

Judge McMahon firmly rebuffed the motion. She concluded that the Binetti complaint's allegations only incidentally affected the operations of Washington Mutual, and moreover, OTS regulations specifically exempted State laws on the subjects of breach of contract and consumer fraud from HOLA's preemptive force. Judge McMahon reached this result even though preemption under HOLA is broader than under the National Bank Act because, unlike the NBA, HOLA's regulations provide that OTS **"occupies the entire field** of lending regulation for

---

[2] Levitansky v. FIA Card Services, N.A., 492 F. Supp. 2d 758, 2007 U.S. Dist. LEXIS 51294 (N.D. Ohio, June 8, 2007); Patterson v. Regions Bank, 2006 U.S. Dist. LEXIS 86029 (S.D. Ill. 2006); Great Western Resources, LLC v. Bank of Arkansas, N.A., 2006 U.S. Dist. LEXIS 92237 (W.D. Ark. March 13, 2006); Cortazar v. Wells Fargo & Co., 2004 U.S. Dist LEXIS 30215 (N.D. Cal. August 9, 2004); Cross-County Bank v. Klussman, 2004 U.S. Dist. LEXIS 7835 (N.D. Cal. April 30, 2004); Harrison v. H&R Block, Inc., 250 F. Supp. 2d 669 (S.D. Miss. 2003); West Virginia v. Parrish Automobile Training Co., 147 F. Supp. 2d 470 (N.D. W.Va. 2001)

[3] In Binetti, the defendant-Bank, Washington Mutual, was a federally chartered savings association and thus governed by the HOLA statute and the OTS regulatory authority.

4

federal savings associations," 12 C.F.R. § 560.2(a).[4]  See additionally Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, OCC, testifying that OCC and OTS preemption are similar—"Our rulemaking authority is based on several sources in Federal law. The types of State laws the rule preempts is substantially nearer those already preempted by the Office of Thrift Supervision in the preemption regulations for Federally chartered savings associations." (Cong. Review of OCC Preemption, p.13-14, annexed as Ex. "B" to the Heisler Dec.)

Because HOLA has greater preemptive muscle than the NBA, Binetti's anti-preemption ruling under HOLA on facts identical to those at bar, clinches the case against preemption in this lawsuit, where a weaker preemption statute—the NBA—is in play.

In summary, the NBA was never meant to immunize unscrupulous national banks which breach their contracts, deceive their borrowers, fraudulently swell their vaults and then piously invoke preemption as a shield against unethical conduct. This Court should deny Wells Fargo's motion to dismiss and thereby refuse to bestow judicial imprimatur on the Bank's counterfeit platitudes about the sanctity of the Federal banking system.

## FACTUAL BACKGROUND

### I.    Allegations of the Complaint

In November, 2005, Plaintiffs Kathleen Baldanzi and Gerald P. Long applied for a co-op loan with Wells Fargo to purchase their cooperative apartment in Manhattan, New York. In response, Wells Fargo issued an "Adjustable Rate Note" (the "Note"), which states that Wells Fargo would lend Ms. Baldanzi and Mr. Long a co-op loan in the amount of $291,520.00 at an initial adjustable annual interest rate of 6.375% and would require monthly payments of $1,548.70. (Complaint at ¶ 17). In addition, the Note specifically provides that "**interest will be**

---

[4] See Jefferson v. Chase Home Finance, 2007 U.S. Dist. LEXIS 94652, p.*33-34 (N.D. Cal. 2007).

charged [only] on unpaid principal," (Id. at ¶18), and Plaintiffs need only make payments in the amount of $1,548.70 every month "until [they have] paid all of the principal and interest and any other charges...that [they] may owe under this Note" (Id. at ¶ 19). The Note did not state that an additional interest payment would be assessed when the loan terminated or thereafter.

Ms. Baldanzi and Mr. Long granted Wells Fargo a security interest in the shares of capital stock and proprietary lease for their co-op property, under which they would deposit with Wells Fargo the shares and lease as set forth in the Loan Security Agreement. On or about November 28, 2005, Plaintiffs entered into a Loan Security Agreement with Defendant, whereby Ms. Baldanzi and Mr. Long pledged to Wells Fargo the Lease for their co-op apartment as well as their 117 shares of stock in the co-op. (Complaint at ¶ 22).

## II.    The Bank Forces Plaintiffs to Pay Extra-contractual Interest

In late September, 2006, Plaintiffs advised Wells Fargo of their intent to sell to a buyer their shares of the co-op (Complaint at ¶ 23). Defendant Wells Fargo responded by issuing a Payoff Statement to the Plaintiffs that provided that the Plaintiffs would owe $291,520.00 in principal along with $1,599.62 in interest. The Bank failed to calculate correct interest and charged Plaintiffs extra-contractual interest four (4) days beyond the date the loan was paid off at the closing. (Complaint at ¶ 27). Acting under compulsion, Ms. Baldanzi and Mr. Long paid approximately $200 to cover these extra interest charges, absent which payment they would have been unable to sell and deliver to the co-op buyer at the closing the co-op shares required by the contract of sale.

## III.    Plaintiffs Sue for Themselves and the Class

On or about October 25, 2007, Ms. Baldanzi and Mr. Long filed this suit on their own behalf and on behalf of a class of co-op borrowers. The class includes all borrowers in New

York State and nationwide who obtained and then paid off or refinanced co-op loans originated or held by Defendant Wells Fargo. (Complaint at ¶ 35). Plaintiffs bring claims on behalf of the Class for breach of contract, unjust enrichment, and violations of GBL §349(a) and the relevant, analogous consumer protection statutes of the other states in which Wells Fargo has co-op loans. In their prayer for relief, Plaintiffs seek (i) certification as a class action; (ii) compensatory damages for Plaintiffs and the Class; and (iii) to enjoin Defendant from continuing its unlawful practices.

*    *    *

A fair reading of the Complaint establishes that Plaintiffs are not trying to tell Wells Fargo how to charge interest on loans. Furthermore, the complaint does not allege that post-payoff interest violates any State statute. If the Bank wants to charge post-payoff interest on fully paid principal, it can do this if it so provides in its contract. But here, Wells Fargo promised to assess interest on unpaid principal alone, and then reversed course and charged borrowers who fully paid their principal with 1-4 days of extra interest. These claims are not preempted by the NBA.

## ARGUMENT

### POINT I

**THE NBA DOES NOT PREEMPT PLAINTIFFS' COMPLAINT. A NATIONAL BANK IS GOVERNED BY STATE CONTRACT LAW, COMMON LAW AND CONSUMER PROTECTION STATUTES WHERE, AS HERE, SUCH LAWS DO NOT IMPAIR THE OPERATION OF THE BANK. AT BAR, PLAINTIFFS' SUIT DOES NOT IMPAIR WELLS FARGO'S OPERATIONS NOR DOES IT SEEK TO REGULATE WELLS FARGO'S IMPOSITION OF INTEREST. RATHER, PLAINTIFFS SUE TO ENFORCE WELLS FARGO'S VOLUNTARILY ASSUMED CONTRACTUAL OBGLIATION TO CHARGE INTEREST ONLY ON "UNPAID PRINCIPAL."**

#### A. A History of the National Bank Act

As sketched in <u>Atherton v. Federal Deposit Insurance Corporation</u>, 519 U.S. 213, 221

(1998), after President James Madison helped create the Second Bank of the United States, many states taxed the Federal Bank in a effort to weaken it. In <u>McCulloch v. Maryland</u>, 17 U.S. 316 (1819), the Supreme Court held those taxes unconstitutional because "the power to tax is the power to destroy."

President Andrew Jackson "effectively killed the bank" (<u>See</u> 519 U.S. at 221), but during the Civil War, a Federal banking system reemerged, moved in part by war financing needs. Following the war, Congress created several banking agencies with regulatory authority over both Federal and State banks.

Less than a decade after passage of the National Bank Act of 1864, the Supreme Court rendered its landmark decision in <u>National Bank v. Commonwealth</u>.

### B. The Holding of <u>National Bank v. Commonwealth</u>- National Banks are Governed Predominantly by State, Not Federal Law.

In <u>National Bank v. Commonwealth</u>, the Plaintiff bank appealed a judgment awarding the Commonwealth of Kentucky a tax and interest on the shares of the bank in Louisville, Kentucky. After finding that the tax was a tax only on the shares of the bank and not the capital of the bank itself, the Supreme Court held that, nonwithstanding preemption, a tax on the shares of the bank was permissible:

> National banks are only exempted from state legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. **They are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws.** Their acquisition and transfer of property, their right to collect their debts, and the liability to be sued for debts are all based on state law. **It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.** (Emphasis Added).

### C. Preemption Standards Under the NBA: Federal Chartered Banks Are Subject to State Law

8

The Supreme Court has repeatedly reaffirmed National Bank v. Commonwealth's rule that national banks are governed in their daily course of business and in their contracts "far more by the laws of the State than of the nation." See Atherton v. Federal Deposit Insurance Corporation, 519 U.S. 213, 222, (quoting with approval the holding of National Bank v. Commonwealth).

While the cases have used a variety of formulations, the theme which emerges is that State statutes and common law that do not discriminate against national banks nor impede the banks' operations are impervious to any preemption defense the defendant-bank may raise. See e.g., Davis v. Elmira Savings Bank, 161 U.S. 275, 290 (1896) ("Nothing, of course, in this opinion is intended to deny the operation of general and undiscriminating state laws on the contracts of national banks, so long as such laws do not conflict with the letter or the general objects and purposes of Congressional legislation."); First National Bank of St. Louis v. Missouri, 263 U.S. 640, 656 (1924) (National banks "are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States."); Anderson National Bank v. Luckett, 321 U.S. 233, 248 (1944) ("National banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions.").

In Atherton, supra, 519 U.S. 213, the High Court decided that a federally chartered, federally insured savings association could be governed by state law on the issue of whether a director or officer of the federally insured depository institution was personally liable for monetary damages based on a state standard stricter than the "gross negligence" standard appearing in 12 U.S.C. 1821(k). The Supreme Court held that the state standard applied even if

it was stricter than the federal standard.

See also McClellan v. Chipman, 164 U.S. 347 (1896), where the Supreme Court enforced Massachusetts' preferential transfer statute against a national bank. The Court began its analysis by re-embracing National Bank v. Commonwealth's rule that "national banks are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation [and] all their contracts are governed and construed by state laws." Next, the court held that the preemption inquiry pivots on a two-step evaluation – "a **rule** and an **exception**." "The [general] **rule** being the operation of general state laws upon the dealings and contracts of national banks, the **exception** being the cessation of the operation of such laws whenever they **expressly conflict** with the laws of the United States or **frustrate the purpose** for which the national banks were created or **impair their efficiency** to discharge the duties imposed upon them by the laws of the United States."

In upholding the efficacy of Massachusetts' preferential transfer statute against the national bank, the Supreme Court in McClellan v. Chipman expressly rejected the approach Wells Fargo advocates here that any operation of State law on a national bank's contracts is an unlawful restraint upon the Federal banking power. Instead, ruled the Court, State contract law applies unless such law "impairs" of "frustrates" the efficiency of national banks in discharging their duties:

> **Indeed, reduced to its last analysis, the position here assumed by plaintiff . . . amounts to an assertion that national banks in virtue of the act of Congress are entirely removed, as to all their contracts, from any and every control by the state law. . . .** As long since settled in the cases already referred to, the purpose and object of Congress in enacting the National Bank Law was to leave such banks as to their contracts in general under the operation of the state law, and thereby invest them as federal agencies with local strength, whilst, at the same time, preserving them from undue state interference wherever Congress within the limits of its constitutional authority has expressly so directed, or wherever such state interference frustrates the lawful purpose of Congress or impairs the efficiency of the banks to discharge the duties imposed upon

them by the law of the United States."

### D. OCC Regulations Exempt This Case from NBA Preemption

The Office of the Comptroller of the Currency employs principles of federal preemption articulated by the Supreme Court. (See January 28, 2004 statement of Hon. Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel of OCC: OCC's preemption rules "follow standards established by the Supreme Court" and "do not immunize national banks from complying with a host of State laws that form the infrastructure of doing banking; contract law, tort law, public safety laws, generally applicable criminal laws." (Cong. Review of OCC Preemption at pp. 13-14, Ex. B to Heisler Dec.)). Thus, 12 C.F.R. § 7.4008(d)(e) states:

> State Laws That Are Not Preempted.  State laws on the following subjects are not inconsistent with the **non-real estate** lending powers of national banks and applied to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:
>
> (1)  contracts;
> (2)  torts;
> (3)  criminal law;
> (4)  right to collect debts;
> (5)  acquisition and transfer of property;
> (6)  taxation;
> (7)  zoning; and
> (8)  any other laws, the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks are otherwise consistent with the powers set out in paragraph (a) of this section.[5]

---

[5]  12 C.F.R. § 34.4 constitutes the OCC's regulation for nationally chartered banks involved in **real estate** lending. Section 34.4(b) provides that state laws on the following subjects are not inconsistent with the real estate lending power of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:

>    (1)  contracts;
>    (2)  torts;
>    (3)  criminal law;
>    (4)  Homestead Laws specified in 12 U.S.C. § 1462a(f);
>    (5)  right to collect debts;
>    (6)  acquisition and transfer of real property;
>    (7)  taxation;
>    (8)  zoning; and
>    (9)  any other law, the effect of which the OCC determines to be incidental to the real estate lending

11

### E. The OCC's Chief Counsel Testifies That State Contract Law and Consumer Fraud Statutes Are Not Preempted

The OCC chief counsel in testimony to Congress specifically affirmed that the NBA preempts neither state contract law nor consumer protection statutes prohibiting unfair or deceptive practices. *As to contract law:*

> the National Bank Act "does not immunize national banks from complying with a host of State laws that form the infrastructure of doing the business of banking; **contract law,** tort law, public safety laws, generally applicable criminal law." (See Congressional Review of OCC Preemption, p. 14, Ex. B to the Heisler Dec.).

*With respect to consumer fraud acts,* Chief Counsel Williams said this:

> If you have a State law that says you do not engage in unfair and deceptive practices . . . of course we do not argue that it would interfere with the national bank's federal powers that it has to be allowed to engage in unfair or deceptive practices or discriminatory practices. That type of law protects against practices that are fundamentally inconsistent, abhorrent to national banks the way we want to see the national banking system operate. (Id. at 33)

### F. A Torrent of Precedent Has Held There Is No NBA Preemption in Suits Like This One

Bottomed on the bedrock foundation of National Bank v. Commonwealth that a national bank is *bound* predominantly by the local state's laws, federal and state courts have rejected preemption defenses under the NBA and analogous banking statutes in factual contexts virtually identical to the one involved here.

The typical scenario centers on a bank entering into a contract with a customer or a borrower and then charging interest or fees greater than the sums specified in the agreement or imposing fees and/or interest never mentioned at all. The plaintiff sues the bank (often on behalf

---

operations of national banks or otherwise consistent with the powers set out in 34.3(a). (Plaintiffs note, parenthetically, that Wells Fargo consistently cites 12 C. F. R. §34.4 as the pertinent preemption regulation. Wells Fargo is in error because under New York law, co-op transactions are generally deemed to involve personal not real property. In re Jack, 126 Misc. 2d 1060, 1062 (Surr. Ct. Monroe Co. 1997). Hence, the operative regulation at bar is 12 C.F.R. §7.4008, which deals with "non-real estate" loans. Wells Fargo's mistake is inconsequential because both sections are essentially identical on preemption.)

12

of a similarly situated class) for breach of contract, violation of state consumer fraud laws, and unjust enrichment. Defendant bank then seeks dismissal and refuge in the NBA or Homeowners Loan Act ("HOLA") or the Depository Institution Deregulation Act ("DIDA") (the latter two of which govern banks other than national banks), asserting that the federal banking statutes preempt the plaintiffs' complaint. Virtually, without exception, the courts have rejected these preemption defenses.

As aptly capsulized by West Virginia v. Parrish Automobile Training Co., 147 F. Supp. 2d 470, 471 (N.D. Va. 2001):

> District courts have overwhelmingly found claims for failure to disclose interest charges are not within the scope of . . . the NBA, citing Monday v. Coast to Coast Wireless Cable, 1997 U.S. Dist. LEXIS 2970 (M.D. Ala. 1997) (Monday held that a plaintiff's state law claims for fraudulent failure to disclose certain charges for interest and discounts did not fall within the coverage of the NBA and thus were not preempted.).

See further Smith v. Beneficial National Bank U.S.A., 971 F. Supp. 513 (M.D. Ala. 1997) (same).

Numerous cases establish that NBA preemption is not a defense where a borrower or customer sues for breach of contract, unjust enrichment-restitution and consumer fraud based on the bank charging interest or fees greater than specified in the contract or exacting charges never mentioned in the contract at all.

### (i) Breach of Contract Claim Not Preempted by the NBA

Levitansky v. FIA Card Services, N.A., 492 F. Supp. 2d 758 (N.D. Ohio 2007) is illustrative. There, plaintiff-consumer and a class of individuals who entered into agreements with FIA, a credit card company, sued defendant in state court alleging breach of contract. The company removed the action to federal court on the ground that the National Bank Act completely preempted the state law claim. The consumer moved to remand to state court, and the district judge granted the motion.

Plaintiff-consumer asserted that the company extended one or more promotional offers for balance transfers and cash advance checks where the transaction fee would be limited to 3% of each advance and not above $75. However, alleged the consumer, the company breached its contract by charging $240 for cash advance fees and balance transfers in excess of the agreed amount of $75.

In rejecting defendant FIA's claim of NBA preemption, the District Court noted— "Plaintiff claims that defendant FIA charged a transactional fee that was not actually negotiated by the parties. Therefore, plaintiff only pleads state law breach of contract claims which are not preempted." (Id. at p. 765).

### (ii) Consumer Fraud Act and Contract Claims Not Preempted by the NBA

See the following stream of case law establishing that the NBA does not preempt claims against banks based on breach of contract and consumer fraud violations where the bank charges fees or interest greater than the amount contained in the contract or assesses undisclosed fees and/or interest.

Patterson v. Regions Bank, 2006 U.S. Dist. LEXIS 86029 (S.D. Ill. 2006) (Plaintiffs' claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act held not preempted by the NBA. Plaintiffs allege that this violation [of the Illinois Consumer Fraud Act] stemmed from defendant-bank's act of charging an interest rate which actually exceeded the rate allegedly agreed upon by the parties. . . ."); Cortazar v. Wells Fargo & Co., 2004 U.S. Dist. LEXIS 30215 (N.D. Cal. August 9, 2004) (Several state law claims challenge defendant-bank's business practices in charging interest rates to the plaintiff at the closing which was less favorable than what was promised by the bank. Held – complaint not preempted by the NBA.); Great Western Resources, LLC v. Bank of Arkansas, N.A., 2006 U.S. Dist. LEXIS 92237 (W.D.

Ark. March 13, 2006) (upholding complaint against defendant bank's preemption attack. Plaintiffs' interposed causes of action for breach of contract, violation of the Arkansas Deceptive Trade Practices Act based on extra-contractual fees imposed by defendant bank).

See further West Virginia v. Parrish Automobile Training Co., 147 F. Supp. 2d 470 (N.D. W.Va. 2001) (NBA did not preempt plaintiff's claims under the West Virginia Consumer Credit and Protection Act where plaintiff challenged the defendant's failure to disclose to customers the fact that interest points were being added to the rate originally quoted by the bank. Significantly, the court rejected defendant's argument that regulations promulgated by the OCC preempted plaintiff's consumer fraud act claims. While OCC regulation [12 C.F.R. § 7.4008(c)] states that a bank shall not engage in unfair or deceptive practices, "this regulation does nothing to express that this provision, therefore, displaces the state law cause of action through complete preemption. Nor does it appear to be in conflict with any state law. Rather, its seeming congruence with state law regulating unfair and deceptive practices leads the court to reject defendant's argument."); Carson v. H&R Block, Inc., 250 F. Supp. 2d 669, 673 (S.D. Miss. 2003); Mason v. Fidelity Federal Bank, 40 F. Supp. 2d 1340 (M.D. Ala. 1999) (NBA did not preempt plaintiffs' allegation that they were charged interest in an amount greater than provided in the agreement.).

To the same effect are Wallace v. National Commerce Bancorporation, 193 Tenn. App. LEXIS 152 (Court of App. Tenn. 1993); Smith v. Wells Fargo Bank, N.A., 2005 Cal. App. Unpub. LEXIS 11961 (Court of App. Cal., 4th App. District 2005) (There was no banking preemption of California state consumer fraud law claim where plaintiff alleged that bank breached its contract by charging extra-contractual fees. "Specifically, enforcement of a breach of contract under a state's general law and contracts does not constitute a 'state law limitation

15

concerning disclosure requirements.'").

See, additionally, Cross-County Bank v. Klussman, 2004 U.S. Dist. LEXIS 7835 (N.D. Cal. 2004) (Plaintiff alleged that defendant bank assessed undisclosed interest charges on accounts. The complaint alleged violations of California's Consumer Legal Remedies Act, Delaware's unfair business practices law, breach of contract and fraud. Held: Neither the NBA nor the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831(d), preempted plaintiff's state law claims because the essence of the action asserted that defendant imposed undisclosed interest charges and "**district courts have overwhelmingly found that claims for failure to disclosure interest charges are not within the scope . . . the NBA.**"); Hunter v. Beneficial National Bank U.S.A., 947 F. Supp. 446, 451-52 (M.D. La. 1996) (Claim that defendant fraudulently failed to disclose certain charges for interest was not preempted by NBA.).

### (iii) Unjust Enrichment – Restitution Claims Not Preempted by the NBA

Jefferson v. Chase Home Finance, 2007 U.S. Dist. LEXIS 94652 (N.D. Cal. 2007) sustained breach of contract, unjust enrichment – **restitution**, and consumer fraud act counts and denied defendant-Chase's motion for summary judgment based on NBA preemption. In a class action for damages, restitution, and injunctive relief, Plaintiff asserted that Defendant Chase Home Finance's practices relating to the way it serviced mortgages violated California's Consumer Legal Remedies Act, California's Business and Professions Act, and constituted conversion under California law. Chase moved for summary judgment, contending that NBA preempted the lawsuit.

The Court denied the motion finding that "the core of plaintiff's cause of action is the claim that Chase misrepresented how it would credit prepayments to plaintiff's accounts. . . .

Plaintiff does not claim that California consumer protection laws require Chase to service or process loans. . . .    Instead, plaintiff claims that the laws require Chase to refrain from misrepresenting the manner in which it does service loans. . . .    The duty to refrain from misrepresentation falls on all businesses.  It does not target or regulate banking or lending, and it only incidentally affects the exercise of bank's real estate lending powers.  **Chase has not articulated any way that enforcing state laws prohibiting misrepresentation to consumers would interfere with a bank's nationwide operations or 'obstruct, impair, or condition' its ability to engage in real estate lending any more than those laws impair the operation of any business.**"); Bumpers v. Community Bank of Northern Virginia, 2008 U.S. Dist. LEXIS 5107 (W.D. Pa. 2008).  See further, Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 1463 (2005) (Court of Appeal held that the NBA and an OCC regulation did not preempt a California consumer fraud statute "based on the predicate act of a systematic breach of its contractual disclosure obligations," because "enforcement of a contractual obligation under a state's general law on contracts only incidentally affects, at most, a national bank's powers.) Id. at 1484.

### G. Cases Under the More Preemption-Biased HOLA Have Ruled Against Preemption in Similar Factual Situations

The Homeowners Loan Act ("HOLA") has broader preemptive sweep than the National Banking Act because HOLA's regulations provide that the Office of Thrift Services "occupies the entire field of lending regulation for federal savings associations," (12 C.F.R. § 560.2(a)), a prescription not found in the NBA.  Nonetheless, cases adjudicated under HOLA concur that HOLA does not preempt breach of contract and consumer fraud claims founded on a defendant bank's breach of its contractual obligations.  See Jefferson v. Chase Home Finance, 2007 U.S. Dist. LEXIS 94652, p.*33-34 (N.D. Cal. 2007); Konynenbelt v. Flagstar Bank, 617 N.W.2d 706, 710-714 (Mich. App. 2000) (HOLA does not preempt common law tort and contract claims.);

Tuxedo Beach Club Corp. v. City Federal Savings Bank, 749 F. Supp. 635, 658 (D.N.J. 1990) (Private right of action under state consumer protection laws are not preempted by HOLA.); Flanagan v. Germania, F.A., 872 F.2d 231, 234 (8th Cir. 1989) (claim for tortious interference with contract not preempted by HOLA); Derenco, Inc. v. Benjamin Franklin Federal Savings & Loan Association, 577 P.2d 477, 480-489 (applying state common law unjust enrichment principles to loan related activities of federal lenders); Siegel v. American Savings & Loan Association, 210 Cal. App. 3d 953, 958-965 (1989) (Consumers can sue a federal lender based on a variety of state law claims, including unfair competition, breach of contract, and breach of agency duty.).

### H. *Binetti v. Washington Mutual* Dooms Wells Fargo's Preemption Motion

If there is any doubt that the National Bank Act does not preempt Plaintiffs' causes of action against Wells Fargo here for imposing interest on fully paid principal, then Binetti v. Washington Mutual Bank, 446 F. Supp. 2d 217 (S.D.N.Y. 2006), razes all such doubt. Binetti's facts replicate this suit. There as well as here, a mortgage lender imposed interest on fully paid principal even though the loan agreements proclaim that interest was due only on "unpaid principal." Like Wells Fargo at bar, the defendant bank in Binetti moved to dismiss on preemption grounds claiming that HOLA preempted plaintiff's claims for breach of contract, violations of New York's Consumer Fraud Act, and unjust enrichment. Even though HOLA's preemptive scope is broader than the NBA's, Judge McMahon still held – based on overwhelming case law – that HOLA did not preempt plaintiff's claims. She found that the causes of action only incidentally affected operations of the defendant bank, and, hence, preemption was inapplicable.

Wells Fargo's memorandum (p.19) breezily asserts that Binetti is not an "impediment" to

dismissal and also assures the Court that <u>Binetti</u> will be "address[ed] … in reply." This is a promissory note destined for default. Wells Fargo tries to slough off <u>Binetti</u> as decided under a different regulatory scheme, HOLA, and thus not relevant to this NBA case. But OCC's Chief Counsel herself testified that preemption standards under the OCC-regulated National Bank Act and the OTS-regulated HOLA are the same. (<u>See</u> testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, OCC, testifying that OCC and OTS preemption are similar—"Our rulemaking authority is based on several sources in Federal law. The types of State laws the rule preempts is substantially nearer those already preempted by the Office of Thrift Supervision in the preemption regulations for Federally chartered savings associations.") (<u>Cong. Review of OCC Preemption,</u> p. 13-14, Ex. B to the Heisler Dec.). More fundamentally, since HOLA possesses more preemptive power than the NBA, the <u>Binetti</u> decision applies <u>a fortiori</u> to the instant lawsuit.

## I.  **Application of the Above Authority to This Case**

This avalanche of authority, stretching back 140 years, compels denial of Well Fargo's motion to dismiss Plaintiffs' complaint. As <u>National Bank v. Commonwealth</u> and its prolific progeny prescribe, national banks are subject to generally applicable state laws that govern all commercial entities. <u>See Atherton v. Federal Deposit Insurance Corporation</u>, 519 U.S. 213, 222, 223 (1997). "This Court has consistently recognized that because Federal law is generally interstitial, national banks must comply with most of the same rules as their State counterparts." <u>Watters v. Wachovia Bank, N.A.</u>, 127 S. Ct. 1559, 1574 (2007) (Stevens, J., dissenting). Contrary to Wells Fargo's hypothesis, Congress has declined to provide an entire system of federal law to govern every aspect of bank operations. Consequently, national banks have traditionally been "governed in their daily course of business far more by the laws of the state

than of the nation. All their contracts are governed and construed by state laws." National Bank v. Commonwealth, 76 U.S.at 362.

In the instant case, Plaintiffs are suing because Wells Fargo breached its freely chosen contractual commitment to impose interest for co-op mortgage loans only on unpaid principal. Based on that conduct, Plaintiffs allege causes of action for breach of contract, violation of New York GBL §349(a) and unjust enrichment. These types of claims fall outside the preemptive reach of the NBA because they do not seek to regulate the operations of a national bank. While State law cannot tell Wells Fargo how or in what amount the Defendant can charge interest on its loans, it can insist that if Wells Fargo chooses to do business here, it must do so by honoring its contract provisions on interest and refraining from deception derived from a breach of contract.

### J.    The Cases Relied on by Defendant Are Easily Distinguishable

Defendant's motion paints in broad strokes regarding the purposes of the National Bank Act and the general preemption of state law in favor of federal banking regulation.

However, Wells Fargo fails to cite a single precedent in support of the proposition that the specific claims Plaintiffs allege here are preempted. The cases Wells Fargo cites for the broad principles which form Defendant's argument all involve direct attempts at State regulation, often in explicit contradiction with promulgated federal rules. In Wells Fargo Bank N.A. v. Boutris, 419 F.3d 949 (9th Cir. 2005), a California statute expressly regulated the time period for which interest could be assessed. In order to enforce this statute, state regulatory authorities attempted to audit the operating subsidiary of a national bank and revoke its license to operate in the state, both practices being clearly preempted by OCC regulations.[6] Cf. Watters v. Wachovia Bank, N.A., --U.S.--, 127 S.Ct. 1557, 1565 (2007) (holding that national banks are "subject to

---

[6] Note that the court expressly found the underlying state statute – preventing the assessment of per diem interest prior to the recording of a mortgage – was not preempted. Wells Fargo, 419 F.3d at 967-969.

20

OCC's superintendence, and not to the licensing, reporting, and visitorial regimes of the several states"); <u>Barnet Bank of Marion County, N.A. v. Nelson</u>, 517 U.S. 25 (1996) (federal statute permitting national bank to sell insurance in small towns preempts state statute forbidding this practice); <u>Clearinghouse Ass'n, L.L.C. v. Cuomo</u>, 510 F.3d 105 (2d Cir. 2007) (exercise of visitorial powers vested solely in OCC by express regulation); <u>Bank of America v. City and County of San Francisco</u>, 309 F.3d 551 (9th Cir.2002)(federal regulations authorizing charging of certain ATM fees preempt local ordinance prohibiting such fees).[7]

### K. Public Policy Considerations Compel Denial of Wells Fargo's Attempt to Immunize Its Wrongdoing on Preemption Grounds

The implications of Wells Fargo's contentions in favor of preemption are stupefying to contemplate. Wells Fargo urges this court to rule that any loan contract a national bank solemnly signs is unilaterally breachable at will – by Wells Fargo or its banking confederates – and the aggrieved victim of the breach may not sue. And why? Because the National Bank Act purportedly provides a bulletproof shield to Wells Fargo's contract-busting. True, Wells Fargo tries to cloak its tawdry theory in hi-blown rhetoric:

> **The National Bank Act was intended to establish a banking system of 'national character' with 'uniform and universal operation' . . . and courts, therefore, interpret any grant of power by that Act as 'ordinarily preempting contrary state law.'** (Def. Mem. at p.4)

But the Court should not be swayed. Exempting national banks from the dictates of honesty will not encourage "uniform and universal operation" of our banking system. To the contrary, it will **undermine** banking because prospective borrowers will avoid doing business with banks like Wells Fargo, which will be emboldened by preemption to switch the terms of their loans,

---

[7] <u>Bank of America</u> actually contradicts Defendant's argument. Because it holds that "[s]tate regulation of banking is permissible when it does not prevent or significantly interfere with the national bank's exercise of its powers," "states retain some power to regulate national banks in areas such as **contracts**, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and **tort law**." Id. at 558-559 & n.2 (citations omitted; emphasis added).

sanctity of contracts be damned.

Coming in the wake of this country's subprime mortgage fiasco – a crisis characterized by unethical banking practices and a crisis Wells Fargo played no small role in fomenting[8] – Wells Fargo's summons to preemption as a defense to its contract-flouting and consumer fraud should be summarily repulsed by this court.

## CONCLUSION

Supreme Court precedents and OCC regulations establish that a national bank is not free to breach its loan contracts, violate state consumer fraud statutes or unjustly enrich itself, by charging an amount of interest greater than the sum specified in the agreement. The NBA preemption doctrine, a child of <u>McCulloch v. Maryland</u>, is designed to prevent states from regulating or unduly impeding the operations of a national bank. Consequently, the NBA does not preempt claims predicated on a national bank's breach of contract, deceptive conduct, and resulting unjust enrichment..

Wells Fargo's motion to dismiss must be denied.

Dated: February 26, 2008

Respectfully submitted,

Jeremy Heisler (JH-0145)
Steven L. Wittels (SLW-8110)
William R. Weinstein (WW-4289)
Andrew Melzer
SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

---

[8] See front page, <u>Wall Street Journal</u>, Monday, December 31, 2007, col. 3, **Lender Lobbying Blitz Abetted Mortgage Mess**. The article describes how a host of subprime lenders and banking trade groups, including Wells Fargo and Company spent heavily on lobbying and political giving to defeat legislation that might have protected home owners who are now in foreclosure. (Annexed to Heisler Declaration as Exhibit "C")

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776